1
2
3
4
5
6
7

8                           UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORINIA

10

11   ERIKA M.,[1]                              Case No.:  22cv651-MSB

12                              Plaintiff,
                                             **ORDER REVERSING DECISION OF**
13   v.                                       **COMMISSIONER AND REMANDING FOR**
                                             **FURTHER ADMINISTRATIVE**
14   KILOLO KIJAKAZI, Acting Commissioner of  **PROCEEDINGS [ECF NO. 15]**
     Social Security,[2]
15
                               Defendant.
16

17

18          On May 9, 2022, Plaintiff Erika M. commenced this action against Defendant

19   Kilolo Kijakazi, Acting Commissioner of Social Security, for judicial review under 42 U.S.C.

20   § 405(g) of a final adverse decision for disability insurance benefits.  (ECF No. 1.)  Based

21   on all parties' consent (see ECF Nos. 4, 7), this case is before the undersigned as

22   presiding judge for all purposes, including entry of final judgment.  See 28 U.S.C. §

23   636(c).  Now pending before the Court is the parties' Joint Motion for Judicial Review

24   ("Joint Motion").  (ECF No. 15 ("J. Mot."))  The Court has carefully reviewed the Joint

25

26   ───────────────────────

27   [1] Under Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the court in [Social Security cases under 42 U.S.C. §
     405(g)] will refer to any non-government parties by using only their first name and last initial."

28   [2] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration.
     See https://www.ssa.gov/agency/commissioner.html (last visited on August 1, 2023).

1    Motion, the Administrative Record ("AR") [ECF No. 11], and the Complaint [ECF No. 1].

2    For the reasons set forth below, the Court **ORDERS** that judgment be entered

3    **REVERSING** the Commissioner's decision and **REMANDING** this matter for further

4    administrative proceedings consistent with this Order.

5                              **I.      PROCEDURAL BACKGROUND**

6          On February 5, 2020, Plaintiff filed an application for supplemental security

7    income benefits under Title XVI of the Social Security Act, alleging disability beginning on

8    January 1, 2017.  (AR 147–52.)  The Commissioner denied the application initially on

9    August 18, 2020, and again upon reconsideration on September 30, 2020.  (AR 87–91,

10   95–100.)  On October 7, 2020, Plaintiff requested a hearing before an administrative law

11   judge ("ALJ").  (AR 101–03.)  On April 12, 2021, ALJ Jay Levine held a telephonic hearing,

12   during which Plaintiff was represented by counsel.  (AR 30–56.)  An impartial vocational

13   expert ("VE"), Nelly Katsell, and Plaintiff's mother, Cynthia Smith, also appeared and

14   testified at the hearing.  (AR 15.)  In a written decision dated June 3, 2021, ALJ Levine

15   found that Plaintiff had not been under a disability from February 5, 2020, the date the

16   application was filed, through the date of his decision.  (AR 12–29.)

17         On June 8, 2021, Plaintiff requested review of the ALJ's decision, asserting that

18   "[t]he ALJ made substantive errors."  (AR 145–46.)  The Appeals Council denied

19   Plaintiff's request for review on March 24, 2022, making ALJ Levine's decision the final

20   decision of the Commissioner.  (AR 1–6); see also 42 U.S.C. § 405(g).  This timely civil

21   action followed.

22                         **II.      SUMMARY OF THE ALJ'S FINDINGS**

23         In rendering his decision, the ALJ followed the Commissioner's five-step

24   sequential evaluation process.  See 20 C.F.R. § 416.920(a).  At step one, the ALJ found

25   that Plaintiff had not engaged in substantial gainful activity since February 5, 2020, the

26   application date.[3]  (AR 17.)  At step two, the ALJ found that Plaintiff had the following

27   _____

28   [3] Although Plaintiff initially alleged disability beginning on January 1, 2017 (AR 147), during the
     administrative hearing she moved to amend the onset date to February 5, 2020, and ALJ Levine

                                                  2

1  severe impairments that significantly limit her ability to perform basic work activities:

2  Tourette's syndrome, obsessive compulsive disorder ("OCD"), attention deficit

3  hyperactivity disorder ("ADHD"), and learning disorder.  (Id.)  The ALJ also determined

4  that Plaintiff's "possible alcohol and THC use disorder" was not a severe impairment

5  because it minimally interfered with her ability to work.  (Id.)  At step three, the ALJ

6  found that Plaintiff did not have an impairment or combination of impairments that met

7  or medically equaled the severity of an impairment in the Commissioner's Listing of

8  Impairments.  (AR 18.)  Specifically, the ALJ concluded that Plaintiff's mental

9  impairments did not meet the criteria for listed impairment 12.11, neurodevelopmental

10  disorders.[4]  (Id.)  See also 20 C.F.R. Part 404, Subpart P, Appendix 1.

11        Based on his evaluation of the full record, the ALJ determined Plaintiff had the

12  residual function capacity ("RFC") "to perform a full range of work at all exertional levels

13  but with the following nonexertional limitations: simple, repetitive tasks in a non-public

14  setting with occasional interaction with coworkers."  (AR 19.)  The ALJ found that

15  Plaintiff's medically determinable impairments could reasonably be expected to cause

16  the alleged symptoms; however, he noted "the intensity, persistence and limiting

17  effects of these symptoms" were inconsistent with the medical and other evidence.  (AR

18  20.)  Further, the ALJ determined Plaintiff's history of ADHD, OCD, and Tourette's

19  syndrome did not preclude her from working because she could control these

20  symptoms with proper adherence to medication and other treatment.  (AR 20–24.)  At

21  step four, the ALJ found Plaintiff had no past relevant work experience.  (AR 24.)  Finally,

22  at step five the ALJ found that given Plaintiff's age, education, work experience, and

23

24  granted the oral motion.  (AR 33–34.)  Accordingly, the Court will use February 5, 2020, as the start of
    the alleged disability period.

25  [4] The ALJ focused his analysis on paragraph B of listing 12.11, finding Plaintiff had moderate limitations
    in: (1) understanding, remembering, or applying information; (2) interacting with others; and (3)

26  concentrating, persisting, or maintaining pace.  (AR 18.)  The ALJ also found Plaintiff had a mild

27  limitation in (4) adapting or managing oneself.  (Id.)  Because Plaintiff did not have at least "one
    extreme limitation or two marked limitations in a broad area of functioning," the ALJ concluded she did

28  not meet the criteria for 12.11, neurodevelopmental disorders.  (Id.)

1  RFC, she could perform several jobs that exist in significant numbers in the national

2  economy.  (AR 25.)  The VE testified that a hypothetical person fitting Plaintiff's profile

3  could perform jobs such as document preparer (sedentary RFC, 38,000 jobs available

4  nationally); shipping/receiving weigher (light RFC, 28,000 jobs available nationally); and

5  garment maker (medium RFC, 22,000 jobs available nationally).  (Id.)  Therefore, the ALJ

6  concluded that Plaintiff was not disabled.  (Id.)

### III.    DISPUTED ISSUES

8        The parties have briefed two issues in their Joint Motion, which Plaintiff asserts

9  are grounds for reversal:

10      1.  Whether the ALJ properly considered the examining opinion of Dr. Kathy

11         Vandenburgh;

12      2.  Whether the ALJ properly considered the testimony of Plaintiff.

13  (J. Mot. at 4.)

### IV.  STANDARD OF REVIEW

15        Section 405(g) of the Social Security Act allows unsuccessful applicants to seek

16  judicial review of the Commissioner's final decision.  See 42 U.S.C. § 405(g).  The scope

17  of judicial review is limited, and the denial of benefits will only be disturbed if it is not

18  supported by substantial evidence or contains a legal error.  Luther v. Berryhill, 891 F.3d

19  872, 875 (9th Cir. 2018).  "Substantial evidence" is a "'term of art used throughout

20  administrative law to describe how courts are to review agency factfinding.'"  Biestek v.

21  Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting T-Mobile South, LLC v. Roswell, 574 U.S.

22  293, 301 (2015)).  The Supreme Court has said substantial evidence means "more than a

23  mere scintilla," but only "such relevant evidence as a reasonable mind might accept as

24  adequate to support a conclusion."  Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S.

25  197, 229 (1938)).  The Ninth Circuit explains that substantial evidence is "more than a

26  mere scintilla but less than a preponderance."  Revels v. Berryhill, 874 F.3d 648, 654 (9th

27  Cir. 2017) (quoting Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th

28  Cir. 1988).

Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.  See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).  Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.  See Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).  The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the case to the Social Security Administration for further proceedings.  Id.  However, the reviewing court "may not reverse an ALJ's decision on account of an error that was harmless."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

## V.  DISCUSSION

### A. Whether the ALJ Properly Considered Dr. Kathy Vandenburgh's Opinion

#### 1.  Summary of the parties' arguments

Plaintiff argues that the ALJ erred by not properly incorporating Dr. Kathy Vandenburgh's opinion on limitations into his RFC finding or giving "specific and legitimate" reasons for rejecting those limitations, despite giving Dr. Vandenburgh's opinion partial persuasive weight.  (J. Mot. at 4–13.)  Specifically, Plaintiff argues the ALJ erred by not including the following limitations in his RFC determination: (1) moderate limitation sustaining an ordinary routine without supervision; (2) likely moderate to marked limitation maintaining appropriate pace and persistence; (3) marked impairment coping with work-related stress; and (4) possible moderate limitation concentrating for more than an hour at a time.  (Id. at 9–10.)  Further, Plaintiff argues that the ALJ did not provide legally sufficient reasons for failing to incorporate these four limitations into the RFC.  (Id. at 11–12.)  Plaintiff says that when any of the limitations were posed to the VE, no work was available.  (Id. at 12.)  Thus, Plaintiff

maintains that the ALJ committed a reversible error because his RFC determination did not adequately capture Dr. Vanderburgh's opinion as to Plaintiff's functional limitations. (Id. at 13.)

In response, the Commissioner argues that the ALJ reasonably considered Dr. Vandenburgh's opinion, found it partially persuasive, and accounted for it in the RFC finding. (Id. at 14–19.) The Commissioner argues that the ALJ properly incorporated Dr. Vanderburgh's opinion into Plaintiff's RFC by finding that Plaintiff was "'capable of simple, repetitive tasks,' without public interaction and only occasional co-worker interaction," thereby ensuring a reduced-stress workplace. (Id. at 15.) Further, the Commissioner maintains that the ALJ properly assessed the other "less than marked" limitations pursuant to the Agency's standards and found that Plaintiff's impairments did not preclude her from all work-related activities. (Id. at 15–16.) Specifically, the Commissioner argues that: (1) Dr. Vandenburgh's assessment that Plaintiff's limitations were moderate for sustaining an ordinary routine and maintaining pace and persistence did not require greater restrictions beyond limiting Plaintiff to simple, repetitive work; and (2) Dr. Vandenburgh's finding that Plaintiff "may have moderate impairment concentrating" for more than one hour was speculation rather than a medical opinion, and it did not require greater limitations. (Id. at 15–17.) In sum, the Commissioner contends that the ALJ reasonably interpreted Dr. Vanderburgh's opinion and crafted an RFC finding consistent with the limitations Dr. Vanderburgh identified. (Id. at 19.)

## 2. Applicable law

Plaintiff applied for supplemental security income on February 5, 2020. (AR 15.) Because this is after March 27, 2017, the Social Security Administration's revised regulations for considering medical opinions apply. See 20 C.F.R. § 404.1520c (2017). Under the revised regulations, the ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." Id. § 404.1520c(a). Instead, the ALJ must the evaluate the persuasiveness of those opinions using the following factors: supportability, consistency, the relationship between the source and

1   the claimant, the source's specialization, and other factors such as the source's

2   knowledge of other evidence and whether there was subsequently submitted evidence.

3   Id. § 404.1520c(c)(1)–(5).  The two most important factors are supportability and

4   consistency.  Id. § 404.1520c(b)(2).  "Supportability" measures the degree to which

5   objective medical evidence and supporting explanations buttress a medical finding.  Id.

6   §§ 404.1520c(c)(1); 416.920c(c)(1).  "Consistency" is the extent to which an opinion or

7   finding is consistent with evidence from other medical sources and non-medical sources

8   in the record.  Id. §§ 404.1520c(c)(2); 416.920c(c)(2).  The more relevant the objective

9   evidence and supporting explanations are to support the medical source, and the more

10  consistent the source is with other evidence in the record, the more persuasive the

11  medical opinion will be.  See Zhu v. Comm'r of Soc. Sec., No. 20-3180, 2021 WL

12  2794533, at *6 (10th Cir. July 6, 2021).

13          Under the revised regulations, "an ALJ's decision, including the decision to

14  discredit any medical opinion, must simply be supported by substantial evidence."

15  Woods v. Kijakazi, 32 F. 4th 785, 787 (9th Cir. 2022); see also Sloane S. v. Kijakazi, No.

16  21cv1043-MMA-MSB, 2023 WL 2017284, at *4 (S.D. Cal. Feb. 15, 2023).  ALJs must

17  address how they considered the consistency and supportability factors in sufficient

18  detail to allow a reviewing court to determine whether that reasoning is supported by

19  substantial evidence.  Titus L.S. v. Saul, No. 20cv04825-AFM, 2021 WL 275927, at *7

20  (C.D. Cal. Jan. 26, 2021) (citing Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020)); Zhu,

21  2021 WL 2794533, at *6 (applying the substantial evidence standard under the new

22  2017 regulations).  The Ninth Circuit has indicated that ALJs should attempt to use these

23  terms "with precision."  Woods, 32 F.4th at 793 n.4.

24          Finally, it is the ALJ's responsibility, not the claimant's physicians, to determine an

25  individual's RFC.  See 20 C.F.R. § 404.1545.  The RFC is the most a person can do despite

26  her physical or mental impairments.  Id. § 404.1545(a).  In formulating an RFC, the ALJ

27  must consider all medically determinable impairments and evaluate "all of the relevant

28  medical and other evidence," including medical reports and sources.  Id. §

404.1545(a)(2),(3).  The Ninth Circuit has historically held that "an RFC that fails to take

into account a claimant's limitations is defective."  Valentine v. Comm'r Soc. Sec.

Admin., 574 F.3d 685, 690 (9th Cir. 2009); Samples v. Comm'r Soc. Sec. Admin, 466 Fed.

App'x 584, 586 (9th Cir. 2012).   The RFC need not quote every finding, so long as it

generally captures the limitations in the medical opinion.  See Stubbs-Danielson v.

Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).

### 3.  Dr. Vandenburgh's opinion and the ALJ's treatment thereof

Dr. Kathy Vandenburgh, a consultative psychological examiner, examined Plaintiff

on August 5, 2020.  (AR 268–76.)  Dr. Vandenburgh reviewed Plaintiff's medical history

and administered a complete psychological evaluation, the Wechsler Adult Intelligence

Scale-IV test, and the Wechsler Memory Scale-IV test.  (AR 269.)  After the examination,

Dr. Vandenburgh submitted a medical source statement ("MSS") based on Plaintiff's

"supplied records, presentation, interaction with evaluator, test scores, and information

she provided this evaluator," which indicated the following:

- **No limitations:** (1) ability to socially interact with others at an age-appropriate level; (2) ability to understand instructions; (3) ability to complete simple and detailed tasks; and (4) ability to avoid normal hazards.
- **Mild to moderate limitations:** (1) remembering detailed information.
- **Moderate limitations:** (1) ability to sustain an ordinary routine without sustained supervision; and (2) possible impairment concentrating for periods of time longer than one hour.
- **Moderate to marked limitations:** (1) maintaining appropriate pace and persistence.
- **Marked limitations:** (1) coping with work related stress; and (2) ability to complete complex tasks.  (AR 275.)[5]

The ALJ summarized Dr. Vandenburgh's findings as follows:

> Dr. Vandenburgh opined that the claimant has moderate limitations in her
> ability to sustain an ordinary routine without supervision, she would have
> moderate to marked limitations in maintaining appropriate pace and

---

[5] Dr. Vandenburgh also indicated that Plaintiff "appears capable of managing funds; however, as she reports she overspends and will likely need assistance."  (AR 275.)

persistence due to completing tasks slowly and difficulties due to OCD although she could complete simple and detailed tasks. She would have mild to moderate impairment in remembering detailed information, marked limitations in coping with work stress, marked limitations in completing complex tasks, and would have moderate impairment concentrating for longer than 2 hours at a time.

(AR 22–23.) The ALJ found Dr. Vandenburgh's opinion "partially persuasive because it is supported and consistent with the record as a whole." (AR 23.) He continued:

> The record shows that the claimant has a history of tics, OCD, ADHD, and a learning disorder and was in special education in high school. She is able to take college courses although she has struggled academically, was able to complete an intake questionnaire by herself, and reported being able to go out on her own and use public transportation. Dr. Vandenburgh's mental status exam was generally unremarkable and noted that the claimant was pleasant and cooperative, she was alert, understood simple test questions, had normal mannerisms . . . The treating records show that the claimant's symptoms have generally remained stable even without being compliant with medication. Although she presented and reported increased tics or anxiety, the record shows that the claimant is noncompliant with her treatment regimen as discussed above. Overall, I find the claimant capable of simple, repetitive tasks in a nonpublic setting. The claimant is able to understand and answer questions appropriately, has adequate response time, is attending college courses, and could navigate public transportation on her own. (Id.)

### 4. Analysis

Although the ALJ failed to explain how he considered the supportability and consistency factors in detail, the Court finds that there is nonetheless substantial evidence supporting the ALJ's evaluation of Dr. Vandenburgh's opinion as "partially persuasive." Woods, 32 F. 4th at 787. Here, the ALJ determined Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, repetitive tasks in a non-public setting with occasional interaction with coworkers." (AR 19.) This RFC determination fairly accounted for Dr. Vanderburgh's opinion, including the two most severe limitations she assessed. First, Dr. Vandenburgh found a marked limitation in Plaintiff's ability to complete complex tasks, but no limitation in her ability to complete simple and detailed tasks; the ALJ

1    reflected this by limiting Plaintiff's RFC to "simple, repetitive tasks."  (AR 19, 275.)

2    Second, Dr. Vandenburgh assessed a marked limitation in Plaintiff's ability to cope with

3    work-related stress, which is reflected in the RFC's limitation to a "non-public setting

4    with occasional interaction with coworkers."  (Id.)

5         Additionally, the ALJ's RFC assessment sufficiently accommodated the less than

6    "marked" limitations that Dr. Vandenburgh identified.  Dr. Vandenburgh found Plaintiff

7    "will likely have moderate to marked impairment" in maintaining appropriate pace and

8    persistence.  (AR 275.)  When limitations are defined within a range—as they were here

9    by Dr. Vanderburgh—it is appropriate for the ALJ to make findings within the least

10   restrictive portion of that range.  See McGee v. Kijakazi, No. 20-36074, 2021 WL

11   5860899, at *1 (9th Cir. Dec. 10, 2021) (holding that an ALJ did not err when he

12   incorporated a restroom break every ninety minutes, even though the claimant testified

13   to requiring a break every sixty to ninety minutes).  Although the ALJ did not specifically

14   incorporate "pace and persistence" into his RFC, he discussed this when considering

15   whether Plaintiff met the definition of one of the Commissioner's Listing of

16   Impairments.  (AR 18.)  The ALJ stated, "[w]ith regard to concentrating, persisting or

17   maintaining pace, the claimant has a moderate limitation."  (AR 18.)  Given Dr.

18   Vanderburgh's finding that Plaintiff could perform simple and detailed tasks with no

19   limitations, it was reasonable for the ALJ to omit pace from his RFC determination while

20   still limiting Plaintiff to simple, repetitive tasks.  (AR 19, 275.)  See Stubbs-Danielson, 539

21   F.3d at 1174 (holding that an RFC limited to "simple tasks" incorporated more specific

22   limitations, "including those related to pace and the other mental limitations regarding

23   attention, concentration, and adaptation").

24        Next, Dr. Vandenburgh found Plaintiff had a moderate limitation in her "ability to

25   sustain an ordinary routine without sustained supervision."  (AR 275.)  The Agency

26   considers a moderate limitation to mean the individual has a "fair" ability to function

27   "independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. pt. 404,

28   subpt. P, app. 1, § 12.00F(2)(c).  Given this definition, it was reasonable for the ALJ to

1   omit a supervision limitation from his RFC determination.  Shaibi v.Berryhill, 870 F.3d

2   874, 880 (9th Cir. 2017) (finding substantial evidence supporting an RFC that limited

3   plaintiff to simple routine tasks in a non-public setting, with occasional interaction with

4   coworkers.)  Additionally, "[w]here evidence is susceptible to more than one rational

5   interpretation, it is the ALJ's conclusion that must be upheld."  Burch v. Barnhart, 400

6   F.3d 676, 679 (9th Cir. 2005).

7          Finally, Dr. Vandenburgh opined that Plaintiff "did not have any difficulty

8   attending and concentrating during the one-hour evaluation," but because of her ADHD

9   diagnosis she "may have moderate impairment concentrating for longer periods of

10  time."  (AR 275.)  The Court agrees with the Commissioner that this statement is

11  speculative and does not address "what the [Plaintiff] can still do despite her

12  impairments."  (J. Mot. at 17.)  The RFC needs to be consistent with the relevant

13  assessed limitations, but not identical to them.  See Turner v. Comm'r of Soc. Sec., 613

14  F.3d 1217, 1223 (9th Cir. 2010) (holding the ALJ did not err by rejecting a doctor's

15  opinion that the plaintiff "could not perform simple, repetitive tasks in an environment

16  without public contact or background activity" because he sufficiently incorporated the

17  doctor's observations into his RFC determination).  Here, Dr. Vandenburgh's opinion

18  that Plaintiff *may* be moderately limited in terms of concentrating for more than one

19  hour is based on Plaintiff's ADHD diagnosis; however, she did not directly observe

20  Plaintiff struggling to concentrate for more than one hour.  (AR 275.)  Further, pursuant

21  to the Agency's definition, a moderate limitation means that Plaintiff would have a

22  "fair" ability to concentrate for longer periods of time.  20 C.F.R. pt. 404, subpt. P, app.

23  1, § 12.00F(2)(c).  Plaintiff also testified that although she gets distracted or bored easily,

24  she could probably handle a "four or five-hour shift."  (AR 43.)  Considering this, it was

25  reasonable for the ALJ's RFC determination to omit time restrictions.

26  ///

27  ///

28  ///

**5. Conclusion**

After finding Dr. Vandenburgh's opinion "partially persuasive," the ALJ was required to discuss the consistency and supportability factors in some detail.  <u>Ford</u>, 950 F.3d at 1154; <u>Zhu</u>, 2021 WL 2794533, at *6.  Although he failed to do so, the Court finds this error was harmless, as there is substantial evidence supporting the ALJ's evaluation.  <u>Woods</u>, 32 F. 4th at 792.  Additionally, the ALJ's RFC determination sufficiently addressed Dr. Vandenburgh's findings of marked limitations in Plaintiff's "ability to complete complex tasks" and "coping with work related stress," by limiting Plaintiff to simple, repetitive work with limited social interactions.  (AR 19, 275.)  Further, it was reasonable for the ALJ's RFC to omit additional limitations for the less than marked impairments that Dr. Vandenburgh identified.  <u>See Turner</u>, 613 F.3d at 1223 (holding that the RFC needs to be consistent with the relevant assessed limitations, but not identical to them).  Thus, the ALJ reasonably interpreted Dr. Vandenburgh's opinion and accounted for Dr. Vanderburgh's limitations in his RFC determination.

**B.    <u>Whether the ALJ Properly Considered Plaintiff's Subjective Symptom Testimony</u>**

    **1.    Summary of the parties' arguments**

Plaintiff argues that the ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom testimony related to her medically determinable impairments—Tourette's syndrome, OCD, ADHD, and learning disorder. (J. Mot. at 19–31.)  Plaintiff alleges that in his written opinion, the ALJ merely provided "a general discussion of the medical evidence" but did not offer "any legally sufficient rationale" to discount her symptoms.  (<u>Id.</u> at 23.)  Further, Plaintiff contends that the ALJ committed legal error by failing to link his reasons for rejecting Plaintiff's subjective symptom testimony to specific portions of the testimony.  (<u>Id.</u> at 24–25.)  Plaintiff says the ALJ's "articulated rationale is simply . . . that [Plaintiff]'s testimony is inconsistent with the record as a whole," which is a legal error.  (<u>Id.</u> at 25.)  Additionally, Plaintiff rejects the ALJ's conclusion that she has responded to treatment and improved; she says the fact that she has good days and bad days is consistent with her impairments

1  but does not mean she can complete a full, eight-hour workday.  (Id. at 26.)  Finally,

2  Plaintiff contends her ability to perform "sporadic daily activities" is not determinative

3  of her ability to work.[6]  (Id. at 27–29.)

4         In response, the Commissioner argues that the ALJ properly considered Plaintiff's

5  subjective symptom testimony but found it was "at odds with the longitudinal record

6  and did not deserve full weight."  (Id. at 31.)  For example, the Commissioner says the

7  ALJ properly discounted Plaintiff's alleged disability due to her Tourette's syndrome and

8  resulting motor tics because the record showed the tics were "under control with

9  medication" and Plaintiff had mostly normal speech patterns.  (Id. at 32.)  Additionally,

10 the Commissioner argues the ALJ properly found that Plaintiff's inconsistent medication

11 compliance, combined with her drug and alcohol use, worsened her symptoms;

12 however, despite these problems Plaintiff demonstrated mostly "normal mental

13 function aside from mildly impaired judgment."  (Id. at 32–33.)  Further, the

14 Commissioner maintains that the ALJ properly found the medical record contradicted

15 the severity of Plaintiff's allegations and showed that her "symptoms were fairly well

16 controlled."  (Id. at 33–35.)  Finally, the Commissioner argues that Plaintiff's activities—

17 such as using a computer, navigating public transit, and taking college courses—

18 undermined her complaints of "severe and debilitating symptoms."  (Id. at 35.)  Thus,

19 the Commissioner argues that the ALJ's findings are supported by substantial evidence

20 and should be upheld.  (Id. at 36.)

21        **2.    Applicable law**

22        When evaluating the credibility of a claimant's allegations regarding subjective

23 symptoms such as pain, the ALJ must engage in a two-step analysis.  See Johnson v.

24 Kijakazi, No. 19-17359, 2022 WL 1553259, at *1 (9th Cir. May 17, 2022); Vasquez v.

25 Astrue, 572 F.3d 586, 591 (9th Cir. 2009); Lingenfelter v. Astrue, 504 F.3d 1028, 1035–36

26

27 ───────────────
   [6] Plaintiff also argues that the Court should not consider her "sporadic daily activities" because the ALJ
28 did not articulate this as a reason for rejecting her subjective testimony.  (Id. at 27, 30.)  Therefore, she
   says any such argument by the Commissioner is not properly before the Court.  (Id. at 27.)

1  (9th Cir. 2007).  First, the ALJ must determine whether there is objective medical

2  evidence of an underlying impairment that "could reasonably be expected to produce

3  the pain or other symptoms alleged." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir.

4  2017) (quoting Garrison v. Colvin, 759 F.3d 995, 1014–15 (9th Cir. 2014)).  The claimant

5  is not required to show that an underlying impairment could reasonably be expected to

6  cause the severity of the pain alleged, but only that it could have reasonably caused

7  some degree of pain. Vasquez, 572 F.3d at 591 (citing Lingenfelter, 504 F.3d at 1036).

8       Second, if the claimant meets the first step and there is no evidence of

9  malingering, then the ALJ may reject the claimant's statements about the severity of his

10  symptoms "only by offering specific, clear and convincing reasons for doing so."

11  Trevizo, 871 F.3d at 678 (quoting Garrison, 759 F.3d at 1014–15).  "The clear and

12  convincing standard is the most demanding required in Social Security cases." Revels,

13  874 F.3d at 655 (quoting Garrison, 759 F.3d at 1014–15).  General findings are

14  insufficient, and the ALJ must identify which specific pain and symptom statements are

15  being discounted and what evidence undermines those claims. See Lambert v. Saul, 980

16  F.3d 1266, 1277 (9th Cir. 2020) (citing Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d

17  1090, 1102 (9th Cir. 2014); Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).  An ALJ's

18  failure to identify specific statements and explain why they are not credible constitutes

19  reversible error because the reviewing court cannot determine if the ALJ's decision was

20  supported by substantial evidence. See Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th

21  Cir. 2015); see also SSR 16-3p.

22       "[B]ecause symptoms, such as pain, are subjective and difficult to quantify," the

23  ALJ considers "all of the evidence presented," including information about the

24  claimant's prior work record, statements about their symptoms, evidence submitted by

25  their medical sources, and observations by the Agency's employees and other persons.

26  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p.  Factors the ALJ may consider, in

27  addition to objective medical evidence, include Plaintiff's daily activities; the location,

28  duration, frequency, and intensity of their pain or other symptoms; precipitating and

1  aggravating factors; the type, dosage, effectiveness, and side effects of any medication

2  taken to alleviate pain; treatment; and any other measures used to relieve pain.  See 20

3  C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p.  The ALJ may also consider

4  inconsistencies between Plaintiff's statements regarding pain and the medical evidence.

5  See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 16-3p.  "'[O]nce the claimant

6  produces objective medical evidence of an underlying impairment, an adjudicator may

7  not reject a claimant's subjective complaints based solely on a lack of objective medical

8  evidence to fully corroborate the alleged severity of pain.'"  Bunnell v. Sullivan, 947 F.2d

9  345 (9th Cir. 1991) (quoting Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986.))

10     **3.     Plaintiff's testimony**

11        During the administrative hearing, Plaintiff testified that she does not have a

12  driver's license because she would be "too distracted" on the road due to her ADHD.

13  (AR 34–35.)  Instead, she uses public transportation or walks.  (Id.)  Plaintiff stated that

14  she was not presently enrolled in school because she was unable to focus during online

15  classes; however, she said she previously completed four years at Palomar Community

16  College.  (AR 35.)  Plaintiff further testified that she had no issues with drugs or alcohol.

17  (AR 35–36.)  She later clarified that she had stopped vaping and using marijuana since

18  2020 but saw no improvements to her tics or mental health.  (AR 38.)  With regards to

19  outside activities, Plaintiff said that she had never worked, her only friends are from

20  online video games, and she walks approximately three times per week.  (AR 36–37.)

21        Plaintiff testified she is unable to work because she experiences "intense tics"

22  that cause her to pause while talking, which in turn causes her to lose concentration and

23  tic more.  (AR 37.)  She added that she takes prescription Prozac for her tics and

24  previously took Guanfacine, which partially helped.  (Id.)  Plaintiff opined that she would

25  probably "get distracted or bored easily" in a work environment and could only handle a

26  four- or five-hour shift.  (AR 43.)  Plaintiff testified that different people could make her

27  tics worse.  (AR 39.)  In terms of personal care, Plaintiff said she sometimes went two or

28  three weeks without taking a shower and months without brushing her teeth because "I

get so unmotivated that I just don't want to do anything."  (AR 39.)  Plaintiff testified that she experiences tics every day, but the intensity fluctuates; she experiences head tics approximately every three minutes.  (AR 39–40.)

### 4.  The ALJ's findings

After summarizing Plaintiff's testimony, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (AR 20.)  However, the ALJ found that Plaintiff's statements regarding "the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (Id.)  He explained, "[t]he medical evidence of record shows that the claimant has a history of ADHD, OCD and Tourette's disorder.  However, the evidence does not show that the claimant's symptoms preclude her from working."  (Id.)  In reaching this conclusion, the ALJ highlighted the following medical records:

- **6/14/2016 and 7/15/2016**:  Plaintiff's mental status evaluations showed poor insight and moderately impaired judgment, but otherwise "normal affect that was appropriate, congruent, and disinterested."  Plaintiff had "euthymic mood, her speech was child-like but normal, [she] had coherent, logical, relevant, and concrete thought process, had no suicidal ideations or psychotic thought content, was alert and oriented in all spheres."  (AR 20 (citing AR 232, 234).)

- **5/4/2017**:  Plaintiff reported that her tics were under control with Tenex and her OCD symptoms were under control with Abilify and Luvox.  Her doctor discussed restarting Adderall for problems with concentration, but Plaintiff did not want to at the time.  (AR 20 (citing AR 226).)

- **9/21/2017:**  Plaintiff restarted Adderall and stopped taking Abilify on her own due to possible side effects.  Despite stopping Abilify, Plaintiff's mental status evaluations showed that she was alert and oriented, had fair insight, mildly impaired judgment, and normal mood, affect, speech, and thought process.  (AR 20 (citing 224).)

- **11/2/2017**:  Plaintiff complained that her tics returned; however, the doctor noted that Plaintiff was not taking her prescribed medication consistently.  Otherwise, Plaintiff was doing well.  (AR 20 (citing AR 222).)

22cv651-MSB

- **2/14/2018**: Plaintiff reported that everything was "okay," and she had started school.  She indicated that the tics were a little worse and she experienced interrupted sleep, but was again not taking her medications as prescribed.  (AR 20 (citing AR 220).)  Plaintiff's mental status had no significant changes.  (AR 21 (citing AR 220–21).)

- **6/5/2018**:  Plaintiff failed to appear for this appointment, but the doctor noted that there appears to be "no urgent needs."  (AR 21 (citing AR 219).)

- **10/29/2018**:  Plaintiff remained inconsistent in taking prescribed medication, but her mental exams were unchanged.  She switched from Luvox to Prozac in an attempt to improve her medication compliance.  (AR 21 (citing AR 217).)

- **2/1/2019**:  Plaintiff reported increased anxiety and worsening tics, but also admitted not taking medication twice a day.  (AR 21 (citing AR 214).)

- **10/14/2019**:  Plaintiff reported worsening OCD symptoms, but the doctor noted Plaintiff had been consuming THC and alcohol.  Plaintiff "exhibited depressed and anxious mood with congruent and constricted affect and poor insight and moderate impaired judgment."  The doctor advised Plaintiff to abstain from using drugs and alcohol.  (AR 21 (citing AR 213).)[7]

Based on the "objective medical evidence, the treating history, the claimant's subjective complaints, and the medical opinions," the ALJ concluded Plaintiff had the RFC to perform a full range of work with some nonexertional limitations.  (AR 24.)

### 5.    Analysis

The Court now undertakes the two-step analysis to determine whether the ALJ properly challenged Plaintiff's subjective symptom testimony.  See Johnson, 2022 WL 1553259, at *1; Lingenfelter, 504 F.3d at 1035.  As discussed above, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (AR 20.)  This satisfies step one.  Trevizo, 871 F.3d at 678.  Accordingly, the ALJ may reject Plaintiff's testimony about the severity of her symptoms only by providing "specific, clear, and convincing" reasons.  See Brown-Hunter, 806 F.3d

---

[7] The ALJ also reviewed and summarized the following: (1) treatment records and opinions by Plaintiff's psychologist, Dr. Steven Tess; (2) consultative psychological exam performed by Dr. Kathy Vandenburgh; and (3) reports by state agency medical consultants Dr. R. Paxton and Dr. Helen C. Patterson.  (See AR 22–24.)

1   at 488–89; see also Leza v. Kijakazi, No. 21-16079, 2022 WL 819782, at *2 (9th Cir. Mar.

2   17, 2022).  In addition to giving clear and convincing reasons for rejecting Plaintiff's

3   testimony, the ALJ "must specifically identify the testimony she or he finds not to be

4   credible and must explain what evidence undermines the testimony."  Holohan v.

5   Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  General findings are insufficient; the ALJ

6   "must state which pain [or symptom] testimony is not credible and what evidence

7   suggests the complaints are not credible."  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir.

8   1993) (citing Varney v. Sec'y of Health & Human Servs., 846 F.2d 581, 584 (9th Cir.

9   1988)).  Here, the ALJ failed to meet the demanding "clear and convincing" standard for

10   several reasons.

11           **a.  Discredited testimony**

12           First, the ALJ did not "specifically identify" which parts of Plaintiff's testimony he

13   found not credible and why.  Holohan, 246 F.3d at 1208; see also Brown-Hunter, 806

14   F.3d at 494 ("We cannot review whether the ALJ provided specific, clear, and convincing

15   reasons for rejecting [Plaintiff's] testimony where, as here, the ALJ never identified

16   *which* testimony she found credible, and never explained *which* evidence contradicted

17   that testimony").  The ALJ generally explained that Plaintiff's "statements concerning

18   the intensity, persistence and limiting effects of these symptoms are not entirely

19   consistent with the medical evidence and other evidence in the record."  (AR 20.)[8]  The

20   Ninth Circuit has held that this boilerplate language does not rise to the level of

21   "specific, clear, and convincing" reasons for discounting a claimant's subjective

22   testimony.  See, e.g., Treichler, 775 F.3d at 1103 (holding that a boilerplate introductory

23   sentence falls short of "meeting the ALJ's responsibility" to discuss the objective

24   evidence); Vasquez, 572 F.3d at 592 (finding that the "vague allegation that [Plaintiff's

25

26   _____

27   [8] At the administrative hearing, the ALJ elicited minimal testimony about Plaintiff's symptoms.  (See
   generally AR 34–45.)  Plaintiff briefly discussed her symptoms when the ALJ asked if she had a driver's
   license, whether she was in school, and why she thought she could not work.  (See AR 34–35, 37.)

28   Plaintiff provided slightly more details about her symptoms when questioned by her attorney.  (AR 39–
   40, 43.)

1   claims] were 'not consistent with the objective medical evidence'" was inadequate to

2   reject Plaintiff's subjective testimony).  Because the ALJ only broadly referred to

3   Plaintiff's statements, the Court cannot review whether the ALJ provided clear and

4   convincing reasons for rejecting her testimony.  (AR 20.)  See also Lambert, 980 F.3d at

5   1277 (holding that while the ALJ does not have to perform a "line-by-line exegesis of the

6   claimant's testimony," the ALJ must offer more than a non-specific conclusion that the

7   testimony was inconsistent with medical treatment).

8           Additionally, the ALJ failed to identify specific medical evidence that contradicted

9   Plaintiff's testimony; instead, he provided a general summary of the medical record and

10  stated his non-credibility conclusion.  (AR 20–24.)  "[S]imply reciting the medical

11  evidence in support of [a] residual functional capacity determination" does not meet the

12  "clear and convincing" standard for rejecting a claimant's testimony.  Brown-Hunter,

13  806 F.3d at 489; see also Lambert, 980 F.3d at 1278 (holding that a "relatively detailed

14  overview of [the claimant's] medical history" was not the same as providing clear and

15  convincing reasons for discounting the claimant's testimony).  The ALJ's medical

16  summary, although detailed, does not make connections to specific portions of

17  Plaintiff's testimony.  (AR 20–24.)  While it may be possible to draw inferences about

18  what testimony is inconsistent, it is the duty of the ALJ to identify those inconsistencies

19  with specificity.  Lambert, 980 F.3d at 1278 (citing Brown-Hunter, 806 F.3d at 494)

20  ("Although the inconsistencies identified by the district court could be reasonable

21  inferences drawn from the ALJ's summary of the evidence, the credibility determination

22  is exclusively the ALJ's to make," and the reviewing court is "constrained to review the

23  reasons the ALJ asserts.").  Thus, the Court cannot assess whether the ALJ provided

24  specific, clear, and convincing reasons for rejecting Plaintiff's testimony where, as here,

25  he "never explained *which* evidence contradicted that testimony."  Brown-Hunter, 806

26  F.3d at 494; see also Juanita R. v. Kijakazi, No. 21cv1296-MDD, 2022 WL 17345782, at *4

27  (S.D. Cal. Nov. 30, 2022).  The ALJ's failure to do so constitutes a harmful error.  See,

28  e.g., Michael Louis W. v. Kijakazi, No. 20cv2277-LL(MSB), 2022 WL 2701988, at *10 (S.D.

1  Cal. July 12, 2022) (finding harmful error where the ALJ failed to specify which of

2  Plaintiff's statements regarding pain and physical dysfunction he discredited).

3      **b.  Symptom management**

4      Although the ALJ does not explicitly state this, he seems to discount the severity

5  of Plaintiff's symptoms in part because they are allegedly under control with proper

6  medication compliance.  See supra Part V.B.4 (discussing the ALJ's medical record

7  summary).  While the Ninth Circuit has held that the ALJ may rely on "unexplained or

8  inadequately explained failure to seek treatment or to follow a prescribed course of

9  treatment" when weighing a claimant's credibility, see Tommasetti, 533 F.3d at 1039, it

10  has also ruled that "it is error to reject a claimant's testimony merely because symptoms

11  wax and wane in the course of treatment."  Garrison, 759 F.3d at 1017.  In the context

12  of mental health issues, improvements "must be interpreted with an understanding of

13  the patient's overall well-being and the nature of her symptoms."  Id. (citing Ryan v.

14  Comm'r Soc. Sec. Admin., 528 F.3d 1194, 1200–01 (9th Cir. 2008)).  Here, the ALJ's

15  medical summary highlighted how Plaintiff's tics "were under control" with medication

16  and returned or worsened when she was "not taking her medication consistently."  (AR

17  20–21.)  Likewise, the ALJ noted how Plaintiff's OCD symptoms "were under control

18  with . . . Abilify and Luvox."  (AR 20.)  However, the ALJ failed to assess Plaintiff's alleged

19  improvements as they relate to her "overall well-being and nature of her symptoms,"

20  including her other diagnosed impairments of ADHD and learning disorder.  Garrison,

21  759 F.3d at 1017.

22      Additionally, an ALJ cannot rely solely on objective medical evidence to discredit

23  an individual's subjective testimony regarding pain and symptoms.  See 20 C.F.R. §

24  404.1529(c)(2); Bunnell, 947 F.2d at 346–347 (holding the "the adjudicator may not

25  discredit a claimant's testimony of pain and deny disability benefits solely because the

26  degree of pain alleged by the claimant is not supported by objective medical evidence").

27  Aside from this reason the Court has inferred—that Plaintiff's symptoms are stable with

28  proper medication compliance—the ALJ does not provide any reasons for discrediting

1   Plaintiff's testimony.  Thus, the ALJ failed to give "specific, clear and convincing reasons"

2   for finding that Plaintiff's symptoms are under control.  Trevizo, 871 F.3d at 678; Brown-

3   Hunter, 806 F.3d at 489.

4         **c. Daily activities**

5         Lastly, the Commissioner argues that Plaintiff's ability to perform daily activities

6   undermines her disability claims.  (J. Mot. at 35.)  Daily activities may be used to

7   discredit an individual's testimony about the severity of her symptoms if: (1) the

8   activities contradict the individual's other testimony, or (2) the activities meet the

9   threshold for transferable work skills.  Orn v. Astrue, 495 F. 3d 625, 639 (9th Cir. 2007)

10  (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  Here, the ALJ did not cite

11  Plaintiff's daily activities as a reason for discounting her pain testimony; he merely

12  mentioned them in his summary of the medical record.  (AR 20–24.)  Thus, the Court

13  agrees with Plaintiff that the issue of Plaintiff's "sporadic daily activities" is not properly

14  before the Court.  (J. Mot. at 27–29.)  See Brown-Hunter, 806 F.3d 487, 492 (9th Cir.

15  2015) (the district court is "constrained to review the reasons the ALJ asserts") (quoting

16  Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).

17        Even if the ALJ had articulated Plaintiff's daily activities as a reason to reject part

18  of her testimony, the Ninth Circuit has "repeatedly asserted that the mere fact that a

19  plaintiff has carried on certain daily activities . . . does not in any way detract from her

20  credibility as to her overall disability.  One does not need to be 'utterly incapacitated' in

21  order to be disabled."  Vertigan v. Halter, 260 F. 3d 1044, 1050 (9th Cir. 2001) (quoting

22  Fair, 885 F.2d at 603.)  Further, "disability claimants should not be penalized for

23  attempting to lead normal lives in the face of their limitations."  Reddick v. Chater, 157

24  F.3d 715, 722 (9th Cir. 1998) (citations omitted).  Here, Plaintiff testified to doing

25  activities such as taking college courses, navigating public transportation, and using a

26  computer.  (AR 19.)  In Vertigan, the Court determined an ALJ erred by discrediting a

27  claimant's pain allegations because she could "go grocery shopping with assistance,

28  walk approximately an hour in the malls, get together with her friends," among other

1  activities.  Vertigan, 260 F.3d at 1050.  Similarly, in this case Plaintiff's daily activities are
2  "not necessarily transferable to the work setting" and certainly not dispositive of her
3  ability to work eight hours a day, five days a week.  Id.

**6.    Conclusion**

5        The ALJ erred by failing to specifically identify which of Plaintiff's statements he
6  found not credible, or which medical evidence contradicted that testimony.  Holohan,
7  246 F.3d at 1208.  Although not explicitly stated, the ALJ seems to discredit Plaintiff's
8  testimony based on Plaintiff's symptoms being purportedly managed with proper
9  medication compliance.  However, the ALJ failed to demonstrate why this undermines
10  Plaintiff's overall complaints.  Garrison, 759 F.3d at 1017.  Furthermore, the ALJ may not
11  rely solely on objective medical evidence to discredit Plaintiff's subjective symptom
12  testimony.  Bunnell, 947 F.2d at 346–347.  Finally, the Court cannot consider Plaintiff's
13  daily activities because the ALJ did not articulate this as a reason for discrediting
14  Plaintiff's testimony.  Orn, 495 F. 3d at 639.  Even if the ALJ had raised this issue,
15  Plaintiff's ability to complete daily activities does not necessarily mean she can function
16  in a work environment for extended periods of time.  Vertigan, 260 F. 3d at 1050
17  (finding claimant's ability to drive, grocery shop, or walk for exercise did not discredit
18  her overall disability).  Based on the foregoing, the Court finds that the ALJ failed to
19  provide clear and convincing reasons for discounting Plaintiff's subjective symptom
20  testimony.  This error was not harmless because it "precludes us from conducting a
21  meaningful review."  Michael Louis W., 2022 WL 2701988, at *10.

**VI.  CONCLUSION**

23        The reviewing court may enter a "judgment affirming, modifying, or reversing"
24  the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand
25  the case to the Social Security Administration for further proceedings.  Id.  The reviewing
26  court has discretion in determining whether to remand for further proceedings or award
27  benefits.  See Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan,
28  888 F.2d 599, 603 (9th Cir. 1989).  Remand for further proceedings is warranted where

additional administrative proceedings could remedy defects in the decision.  See Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, where the record has been fully developed, or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled.  See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985); Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980).

Here, Plaintiff contends that the Court should reverse and remand for payment, or in the alternative, reverse and remand for further administrative proceedings.  (J. Mot. at 13, 30–31.)  Defendant asks the Court to affirm the ALJ's decision, or in the alternative, to remand for further proceedings.  (Id. at 39.)  The Court finds that remand for further proceedings is warranted because additional administrative proceedings could remedy the defects in the ALJ's decision.  Therefore, the Court **ORDERS** that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated:  August 8, 2023

Honorable Michael S. Berg
United States Magistrate Judge

22cv651-MSB